UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA STEIN and STUART STEIN,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS INSURANCE COMPANY OF ARIZONA,<br><br>Defendant. | Case No.: 3:19-cv-00410-DMS-AHG<br><br>**ORDER ON JOINT MOTION RE DISCOVERY DISPUTE CONCERNING PRODUCTION OF FICA'S RESERVE MATERIALS**<br><br>**[ECF No. 86]** |

Before the Court is the parties' Joint Motion re. Discovery Dispute. ECF No. 86. Plaintiffs Barbara and Stuart Stein ("Plaintiffs") seek discovery of Farmers Insurance Company of Arizona's ("Defendant") reserve information. *Id.* at 2-5. Defendant contends this information is not relevant. *Id.* at 5.

**I.   BACKGROUND**

This case arises from Defendant's actions in adjusting Plaintiffs' insurance claim following Plaintiffs' automobile accident with an uninsured motorist in Colorado. Third Am. Compl. ¶¶ 1, 9, 64, ECF No. 44. Plaintiffs, who are residents of New Mexico, allege their damages claims were covered under uninsured motorist provisions of an automobile insurance policy issued by Defendant and an umbrella insurance policy drafted by Farmers

Group, Inc. and issued by Farmers Insurance Exchange.[1] *Id.* ¶¶ 3-4, 10, 65. In the months following the accident, Plaintiffs had many communications with employees of Defendant during which they claim misleading, incorrect, and bad faith statements were made while Defendant improperly delayed adjustment and payment of their claims. *Id.* ¶¶ 65-95.

Plaintiffs filed the instant lawsuit on February 28, 2019. ECF No. 1. In the operative Third Amended Complaint, Plaintiffs allege causes of action for (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, and (3) declaratory relief. ECF No. 44 ¶¶ 96-111.

## II. LEGAL STANDARD

The scope of permissible discovery in civil cases is dictated by Rule 26 of the Federal Rules of Civil Procedure, which permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts further consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The information sought need not be admissible to be discoverable. *Id.* District courts have broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

## III. DISCUSSION

In the present dispute, Plaintiffs seek to discover the amount of loss reserves Defendant set aside for this case. Plaintiffs rely on the reasoning set forth in *Bernstein v. Travelers Ins. Co*, 447 F. Supp. 2d 1100 (N.D. Cal. 2006) and *Lipton v. Superior Court*, 48 Cal. App. 4th 1599 (2nd Dist. 1996) in arguing that reserve information is relevant,

---

[1] Farmers Group, Inc. and Farmers Insurance Exchange since have been dismissed from the case, so only the claims against Defendant remain. ECF Nos. 18, 37.

particularly in a bad faith action.² ECF No. 86 at 3-5. Defendant responds that its reserve calculations are made without any analysis of the factual or legal merits of the claims and, therefore, are irrelevant to any determination of whether or not Defendant acted in bad faith in handling Plaintiffs' claims. *Id.* at 5.

In evaluating the relevance of the reserves, the Court first looks to the elements of Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing. Under New Mexico law³, "[t]he breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) (quoting *Cont'l Potash, Inc. v. Freeport–McMoran, Inc.,* 858 P.2d 66, 82 (N.M. 1993)). Because the intent of the implied covenant is to effectuate the agreement's promises, "it is

---

² Plaintiffs cite to cases applying California, as opposed to New Mexico, law regarding discovery of reserves. As District Judge Sabraw succinctly explained in ruling on Farmers Group, Inc.'s motion to dismiss, "[w]here, as here, a court exercises diversity jurisdiction, the forum state's choice of law rules determine which state's law applies." ECF No. 37 at 4 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because this Court sits in California, the Court applies California choice-of-law rules to determine whether California or New Mexico law governs this issue. Under California law, the party seeking to apply foreign law bears the burden of satisfying each step of the test. *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 840 (Cal. Ct. App. 2007) ("[t]he party arguing that foreign law governs has the burden to identify the applicable foreign law, show that it materially differs from California law, and show that the foreign law furthers an interest of the foreign state"). While it may be argued that the law applicable to the underlying breach of contract and bad faith claims (in this case, New Mexico law) also should be applied to analyzing what discovery is relevant to prove those claims, Plaintiffs did not argue that the Court should apply New Mexico law here. Therefore, the Court will apply California law to the reserve issue.

³ As explained by District Judge Sabraw in a recent decision, "[t]he parties agree New Mexico law applies to the Auto Policy because the contract provides the law of the state of the policyholders' residence controls, and it is undisputed that Plaintiffs live in New Mexico." ECF No. 63 at 6; *see also* Cal. Civ. Code § 1646 (West) ("[a] contract is to be interpreted according to the law and usage of the place where it is to be performed").

breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Id.* (quoting *Azar v. Prudential Ins. Co. of Am.,* 68 P.3d 909 (N.M. 2003)). "Courts have recognized that 'evasion of the spirit of the bargain ... and interference with or failure to cooperate in the other party's performance' constitute bad faith and may 'violate the obligation of good faith in performance.'" *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. d (1981)). In this case, Plaintiffs allege conduct constituting bad faith, including the following non-exhaustive list: (1) not engaging in any substantial investigative efforts into Plaintiffs' claims and injuries during the first almost eight months following the accident, (2) an adjuster wrongly informing his attorney that Plaintiffs had been uncooperative and not provided necessary paperwork and records, when they had, in fact, done so, (3) not responding to Plaintiffs' reasonable requests and demands in a timely manner, (4) wrongfully denying and misrepresenting coverage, and (5) not tendering sums adequate to compensate Plaintiffs for their injuries. ECF No. 86 at 2-3 (citing ¶¶ 83, 93, 97, 105, 128 of their Third Amended Complaint). It is these allegations that Plaintiffs now seek to prove through discovery.

Plaintiffs argue they need specific information about the loss reserves to use during depositions of Defendant's adjusters. *Id.* at 2-4. As an initial matter, Defendant acknowledges that under both California and New Mexico law, determination of whether reserve information is relevant should be made on a case-by-case basis. *See id.* at 5-6; *Lipton v. Superior Court*, 48 Cal. App. 4th 1599, 1614 (2nd Dist. 1996) (explaining that evidence of loss reserves "may or may not be relevant in a subsequent bad faith action, depending on the issues presented"); *Linville v. Nat'l Indem. Co.*, No. CV 14-0013 JAP/WPL, 2014 WL 12593993, at *3 (D.N.M. Sept. 30, 2014), *on reconsideration,* No. CV 14-0013 JAP/WPL, 2014 WL 12616644 (D.N.M. Dec. 2, 2014) ("[w]hether reserve information is relevant should be decided on a case-by-case basis by examining the particular issues present in the case"). Here, Defendant's objection essentially is that Plaintiffs will treat the reserve number as an admission of liability and the amount Defendant evaluated Plaintiffs' case to be worth, as well as how much Defendant is able

to pay to resolve it. However, Plaintiffs have made clear that they seek to use the reserve information during depositions of Defendants' claims adjusters and employees to further probe Defendant's analysis of the case throughout the claims process.

Reserve information may be relevant for many reasons—particularly to a bad faith claim—and the Court finds several of those reasons applicable to the facts of this case. For example, discovery of how an insurer arrived at the reserve amount and whether its employees followed statutory and company guidelines would be relevant to the employees' reasoning and intentions. As the court explained in *Bernstein*,

> During these depositions, counsel will use this discovered material to explore how (by what reasoning) Travelers' adjusters arrived at the reserve figures they selected and what considerations informed any accompanying comments or related communications. To conduct such an examination effectively, counsel for plaintiffs must know what the reserve figures were. It is only by asking Travelers to explain how, specifically, it arrived at each reserve amount that plaintiffs' counsel can effectively explore the reasoning Travelers used—and thus try to expose discrepancies between Travelers' internal assessments and its external communications and conduct. Plaintiffs' counsel also intends to cross-examine Travelers' witnesses about how closely they followed established company guidelines or criteria for setting reserves for claims of the kind involved here—and to ask them to explain any apparent differences between those criteria and the bases for the reserve decisions that were made on Bernstein's claims.
>
> Through these intended uses, plaintiffs may well be able to deploy the information they seek to discipline the giving of testimony during the depositions (and at trial) and to probe the accuracy and truthfulness of factual averments by Travelers on issues that are central to plaintiffs' theory of the case. Without the materials sought through this discovery, plaintiffs and the court would be more dependent on oral testimony from Travelers' agents about what they really thought about the claims as they were being processed—and thus more vulnerable to good faith errors of memory or to deception.

*Bernstein,* 447 F. Supp. 2d at 1108–09. As the *Bernstein* court makes clear, a claimant's ability to prove a bad faith allegation when they are dependent only upon the statements and testimony of the insurer's employees as to the evaluations and motivations of the

insurer in processing a claim results in lop-sided discovery. Allowing Plaintiffs access to the reserve information to guide their deposition inquiry somewhat levels the playing field. *See* Fed. R. Civ. P. 26(b)(1) (allowing courts to consider "the parties' relative access to relevant information" in deciding whether to allow discovery). Likewise, reserves "are likely to be frequently adjusted during the course of the litigation." *Lipton*, 48 Cal. App. 4th at 1613. Defendant has not asserted that it never changed the reserve amount and, thus, any increases or decreases in the amount set aside over the life of these claims may be relevant to the adjusters' evolving understanding of this case. Discovery then would allow Plaintiffs to highlight any discrepancies between changes in Defendant's reserve amount and concurrent statements or actions by its employees.

Defendant contends that, while reserves may be relevant in some cases, they are not here because it uses the "worst-case scenario" method to set reserves, which involves no factual or legal analysis. ECF No. 86 at 7. Specifically, Defendant explains that this method sets "an amount of money that reflects a settlement or verdict value in the event all decisions fall against the insurer." *Id.* (quoting *State ex rel. Erie Ins. Prop. & Ca. Co. v. Mazzone*, 218 W.Va. 593, 597 (2005)). This argument is problematic for several reasons. First, Defendant did not provide a declaration from a client representative confirming that it uses the worst-case scenario method or how, specifically, the worst-case scenario calculation is determined. Defendant also did not confirm that it *only* uses the worst-case scenario method or that the calculation was not revised over time in response to changes in the case (e.g. additional evidence provided by Plaintiffs, conversations with Plaintiffs that yielded new information, the filing of the instant lawsuit, etc.). Because reserves are intended to "represent the amount anticipated to be sufficient to pay all obligations for which the insurer may be responsible under the policy with respect to a particular claim," which necessarily includes likely settlement expenses "as well as the legal fees and other costs required to defend the insured," *Lipton*, 48 Cal. App. 4th at 1613, Defendant's reserve estimate almost certainly must have been revised at least upon the filing of this lawsuit, if not at other stages throughout the claims adjustment period. Any changes to Defendant's

calculations over time—as well as the timing of those changes—may be relevant to Plaintiffs' bad faith allegations. Plaintiffs are entitled to more than counsel's bare assertions that the worst-case scenario amount is irrelevant in discovering the factual basis for Defendant's adjustment and coverage decisions.

Though the reserve information itself ultimately may not be admissible, that it is not the standard. *See* Fed. R. Civ. P. 26(b)(1). It may well lead to the discovery of relevant, admissible information that otherwise would be difficult for Plaintiffs to obtain to prove that Defendant's adjusters acted wrongfully and intentionally, or with the intent to frustrate the purpose of the contract and withhold the benefits of the automotive policy from Plaintiffs. *Sanders*, 188 P.3d at 1203. The burden of producing this information is slight and Defendant has not claimed that any privileges otherwise preclude discovery of this information. Moreover, the Court already has entered a protective order in this case, which would protect Defendant's disclosure in the event of any concerns about releasing financially sensitive information. *See* ECF No. 63. Accordingly, the Court finds the reserve information relevant and discoverable.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** Defendant to produce all loss reserve information in its possession, custody, or control and related to Plaintiffs' automotive policy in this case to Plaintiffs on or before **December 17, 2020**.

**IT IS SO ORDERED.**

Dated: December 8, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge