1  Michael N. Poli, *Admitted Pro Hac Vice*
2  POLI, MOON & ZANE, PLLC
   2999 North 44th Street, Suite 325
3  Phoenix, Arizona 85018
   Telephone:  (602) 857-8180
4  Facsimile:  (602) 857-7333
   Email:  mpoli@pmzlaw.com
5

6  Michael D. Dicks, SBN 141914
   DICKS & COGLIANESE, LLP
7  28 North Center Street
   Mesa, Arizona 85201
8  Telephone:  (602) 254-4222
   Facsimile:   (602) 254-0222
9  Email:  mdicks@hoadefectlawyers.com

10
   Attorneys for BARBARA STEIN and STUART STEIN, Plaintiffs
11

12           **UNITED STATES DISTRICT COURT**

13      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14
   BARBARA STEIN, an individual;          Case No. 19-cv-0410-DMS (AHG)
15  and STUART STEIN, an individual,
                                          **MOTION TO STRIKE**
16          Plaintiffs,                   **DEFENDANT FARMERS**
                                          **INSURANCE COMPANY OF**
17                                        **ARIZONA'S EXPERT REPORTS**
   v.                                     **AND FUTURE TESTIMONY OF**
18                                        **CERTAIN EXPERTS**
19  FARMERS INSURANCE COMPANY
   OF ARIZONA, a corporation; and
20  FARMERS GROUP, INC., a                Date:       July 16, 2021
   corporation,                          Time:       1:30 p.m.
21                                        Courtroom:  13A
                                          Judge:      Hon. Dana M. Sabraw
22          Defendants.
23
24                                        Complaint Filed: February 28, 2019
25
26
27
28

   MOTION TO STRIKE                 -1-              *Stein v. Farmers, et al.*
                                                     19-cv-0410-DMS (AHG)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs move to strike all or part of three (3) defense expert witnesses listed by Defendant Farmers Ins. Co. of Arizona ("FICA"). The experts in question are (1) Dr. Rex Jung, (2) Dr. Manuel Gurule, and (3) Dr. Alan Shabo. The basis for this motion is that some of the reports were untimely and may have been delayed in order to give a strategic advantage to FICA, and others are subject to *Daubert* challenges, and/or constitute improper rebuttal.

The governing deadlines are set forth in the various scheduling orders, as amended. The original scheduling order, ECF No. 43, at 2:11-27, ¶¶ 3, 4. clearly set forth a protocol for simultaneous disclosure of experts. With respect to neurological and eye experts, the deadlines were modified in ECF No. 96, at 3:5-11, ¶ 3, providing that Mr. and Mrs. Stein were to undergo neuropsychological testing by the defense and initial expert reports on neuropsychological and eye issues would then be due within **20 days** of the examination. As to Mr. Stein, the neuropsychological examination took place on April 14, 2021, meaning the reports were due by no later than May 4, 2021. For Mrs. Stein, the neuro-psychological examination took place on April 20, 2021, meaning the reports were due by no later than May 10, 2021. But the defense expert reports on eye and neuropsychological issues were first disclosed later than these deadlines.

This motion is supported by numerous exhibits attached hereto. For ease of reference, the exhibits have been highlighted.

**II.    DR. JUNG'S REPORTS RE STUART AND BARBARA STEIN**

**A.    Facts re Dr. Jung's Report on Stuart Stein.**

The expert report from Dr. Jung on Mr. Stein was Defendant FICA's initial expert report contemplated by Rule 26. The defense neuropsychological examination of Mr. Stein was conducted by Dr. Jung on April 14, 2021. *See* **Exhibit A** at 1 (listing "Date of Eval"). Twenty days from April 14, 2021, was

*May 4, 2021*. However, defense counsel served Dr. Jung's **undated** report on *May 6, 2021*. *See* the last page of **Exhibit A** (showing the date of service). This was *two days after* the deadline set in the Court's order, ECF No. 96.

Dr. Jung states in his report that he has "thoroughly and personally reviewed all records provided by counsel…. I have reviewed these summaries as well as the available medical records in formulating my opinions." **Exhibit A** at 1. The records he reviewed included a report dated 4/23/21 from Mr. Stein's neuropsychological expert, Dr. Alasantro. *Id.* at 2. In fact, Dr. Jung's report quotes and paraphrases extensively from Dr. Alasantro's report. *Id.* at 2, 7. *See also* **Exhibit E** (Dr. Alasantro's 4/23/21 report on Mr. Stein).

**B.      Facts re Dr. Jung's Report on Barbara Stein.**

Dr. Jung's examination of Barbara Stein was conducted on April 20, 2021. *See* **Exhibit B** at 1 (listing "Date of Eval"). Twenty days after that date was May 10, 2021. Defendant's counsel served Dr. Jung's **undated** report on *May 24, 2021*. *See* the last page of **Exhibit B** (showing the date of service). This was two weeks after the May 10, 2021, deadline.

As with his other report, this report from Dr. Jung re Mrs. Stein states that he has "thoroughly and personally reviewed all records provided by counsel…. I have reviewed these summaries as well as the available medical records in formulating my opinions." **Exhibit B** at 1.

For Mrs. Stein, the neuropsychological expert is Jay Rosen, Ph.D. Dr. Rosen's report is dated 4/23/21 and is attached hereto at **Exhibit F**. The Jung report on Mrs. Stein refers specifically to the Rosen report, but incorrectly states that the Rosen report is dated 8/26/20. In actuality, a review of the Rosen report, **Exhibit F**, at 1, reflects that Dr. Rosen first examined Mrs. Stein on 8/26/20, following by another interview on 4/5/21, and the report is then dated 4/23/21. It is apparent that the Jung report quotes extensively from the 4/23/21 Rosen report, since the Jung report lists headings from the 4/23/21 Rosen report and then

1  quotes extensively from those headings. Thus, it is clear that the Jung report on

2  Mrs. Stein made extensive use of the 4/23/21 report from Dr. Rosen.

3  As an aside, both Jung reports (on Mr. Stein and Mrs. Stein) fail to comply

4  with Rule 26 in that there is no detailed information disclosing (1) his CV, (2) his

5  prior testimony as an expert for the last four years or (3) his fees for testimony.

6  **C.    Legal Argument.**

7  The identity of an expert witness and their signed written report must be

8  disclosed at the times and in the sequence that the Court orders. Fed. R. Civ. P.

9  26(a)(2)(D). The law for failure to do so is clear. "Rule 37(c)(1) gives teeth to

10  these requirements by forbidding the use at trial of any information required to be

11  disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v.*

12  *Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001).

13  If the rule is not followed, the party in violation "is not allowed to use that

14  information or witness to supply evidence on a motion, at a hearing, or at a trial,

15  unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

16  37(c)(1). The burden is on the party facing sanctions to prove its failure to

17  comply with Rule 26 was either justified or harmless. *Torres v. City of L.A.,* 548

18  F.3d 1197, 1213 (9th Cir. 2008) (citing *Yeti, supra,* 259 F.3d at 1106). *See also*

19  *R+R Sails, Inc. v. Ins. Co. of Pa.,* 673 F.3d 1240, 1246 (9th Cir. 2012).

20  There are four factors to consider in determining whether a failure to

21  follow the rules is harmless: (1) prejudice or surprise to the opposite party; (2) the

22  ability of the party to cure the prejudice; (3) the likelihood of disruption of the

23  trial, and (4) bad faith or willfulness. *Lanard Toys Ltd. v. Novelty, Inc.,* 375

24  Fed.Appx. 705, 713 (9th Cir. 2010). These factors weigh heavily in favor of

25  granting the relief requested in this motion. Each factor will now be discussed.

26  **Prejudice.** It is axiomatic that "where one party's expert has the benefit of

27  reviewing an opposing party's expert report ***before having to prepare his or her***

28  ***own***, there necessarily is prejudice – the latter expert is not going to be able to

expunge from his mind that which he learned from the other, and it would be impossible to say that what he learned did not influence his opinions." *Lefay v. Lefay,* 2014 WL 6473725, at *16 (E.D. Cal. 2014) (emphasis added), *aff'd,* 673 Fed.Appx. 722 (9th Cir. 2016) (citing *Hogan v. Robinson,* 2007 WL 1452790 (E.D. Cal. 2007)). *See also Beecham v. Roseville City Sch. Dist.,* 2017 WL 4038360, at *3 (E.D. Cal. 2017). A review of Dr. Jung's reports on Mr. Stein, **Exhibit A**, and Mrs. Stein, **Exhibit B**, clearly shows he had Dr. Alasantro's 4/23/21 report, and Dr. Rosen's 4/23/21 report (**Exhibits E & F**), before preparing his own initial reports for Defendant FICA. This is the type of prejudice discussed in *Lefay, supra. See also In re Imperial Credit Indus., Inc. Securities Litig.,* 252 F.Supp.2d 1005, 1012 (C.D. Cal. 2003)("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation"); *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.,* 1999 WL 12931, at *4 (4th Cir. 1999)("One expert may not give the opinion of another expert who does not testify"); *American Key Corp., v. Cole Nat'l Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985)("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not.").

**Ability to Cure.** Presumably, a "cure" would be to have Defendant FICA select another neuropsychological expert and that expert can then conduct a re-testing of Mr. and Mrs. Stein. However, the neuropsychological experts indicate that any such new testing must be at least six months from the prior testing. But putting Mr. and Mrs. Stein through another round of neuropsychological testing – which takes a full day – is oppressive and not justified under the facts here. Such a "cure" would subject them to more emotional trauma because of improper conduct on the part of FICA.

**Disruption of the Trial.** The trial in this matter is set to begin on July 26, 2021. That trial date should not be disturbed. But allowing the "cure" of retesting

1   by a new expert would necessitate a continuance of the trial. Moreover, Mr. and

2   Mrs. Stein are, respectively, 74 and 69 years old, and they wish to maintain the

3   current trial date.

4   **Bad Faith or Willfulness.** There is at least a reasonable inference that the

5   delay was occasioned by wanting Dr. Jung to have access to the 4/23/21

6   Alasantro and Rosen reports. If so, this should most certainly result in the

7   granting of this motion. But regardless, even if there was no bad faith or

8   willfulness, based on the other factors discussed above, Dr. Jung's reports re Mr.

9   and Mrs. Stein should be precluded and Dr. Jung should not be allowed to testify.

10  **III.   DR. MANUEL GURULE**

11  **A.   Facts.**

12  Dr. Manuel Gurule is a neurologist whose office is in Albuquerque, NM.

13  In August of 2020, Dr. Gurule was retained by Defendant FICA to do expert,

14  independent neuropsychological examinations of Plaintiffs.

15  At no time did Dr. Gurule ever see, talk to, examine, or test either Mr.

16  Stein or Mrs. Stein. His report, **Exhibit C**, is based purely on a review of records.

17  Notably, Dr. Jung, in his expert report on Mr. Stein, **Exhibit A**, relies on

18  and quotes extensively from the Gurule report on Mr. Stein. Yet neither Dr.

19  Gurule nor Dr. Jung have disclosed how any ***neuropsychological*** opinions can be

20  made without either access to appropriate neuropsychological testing of Plaintiffs

21  or subjecting them to one's own neuropsychological tests.

22  **B.   Argument.**

23  In logic and reason, any neuropsychological conclusions by Dr. Gurule on

24  Mr. Stein fail to pass muster under any reasonable understanding of key *Daubert*

25  criteria. "[T]he test under Daubert is not the correctness of [the experts']

26  conclusions but the soundness of [their] methodology." *Daubert v. Merrill Dow*

27  *Chemical Pharamceuticals, Inc.,* 43 F.3d 1311, 1318 (9th Cir. 1995).

28

Here, Dr. Gurule reached his conclusions about Mr. Stein without any neuropsychological data either prepared by him or another qualified neurologist or neuropsychologist. This methodology is irretrievably flawed. Under *Daubert,* the district judge is a gatekeeper. *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010) (citing *United States v. Sandoval-Mendoza,* 472 F.3d 645, 654 (9th Cir. 2006)). *See also Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (confirming the gatekeeper role of district judges).

Dr. Gurule's report on Mr. Stein should be stricken and he should be barred from testifying. *See, e.g., In re Imperial Credit, supra,* 252 F.Supp.2d at 1012 ("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation"); *Tokio Marine & Fire Ins. Co., supra,* 1999 WL 12931, at *4 ("One expert may not give the opinion of another expert who does not testify"); *American Key Corp., supra,* 762 F.2d at 1580 ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not.").

## IV.   DR. ALAN SHABO

### A.   Facts.

Defendant FICA's eye expert with respect to Mrs. Stein is Dr. Alan Shabo. His report is found at **Exhibit D** hereto. As noted above, under the amendment to the scheduling order, ECF No. 96, at 3:5-11, ¶ 3, eye experts were subject to the same disclosure deadline of 20 days after the defense neuropsychological examination. Also discussed above is the undisputed fact that the defense neuropsychological examination of Mrs. Stein took place on April 20, 2021. Thus, under ECF No. 96, the 20-day deadline for disclosure of FICA's eye expert was May 10, 2021. But the Shabo report was disclosed and served on ***May 24, 2021***, 14 days late. *See* the last page of **Exhibit D**, reflecting the date of service.

/ / /

/ / /

**B.     Question: Report of Dr. Shabo - Expert or Rebuttal Opinion?**

Beginning on page 1 of his report, Dr. Shabo lists the records he reviewed, including, at No. 12 on page 2, a "Record review of Steven Rauchman, M.D." Dr. Rauchman is the eye expert for Mrs. Stein, and his report is attached hereto as **Exhibit G**.

The Certificate of Service accompanying Dr. Shabo's Report labels it as a "**Rebuttal Report**."  *See* the last page of **Exhibit D**. Yet the Shabo report clearly goes far beyond just rebutting the Rauchman report, reviewing and commenting on 24 different reports/records/letters (including the Rauchman report). Rule 26 permits rebuttal expert testimony to the extent that it is *"**intended solely to contradict or rebut** evidence on the same subject matter"* addressed by another party's expert.  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).

FICA may have designated Dr. Shabo's report as a rebuttal report because FICA was 14 days late in disclosing his report. That is, FICA may be seeking to designate Dr. Shabo as a rebuttal expert so as to fall within a 30-day window for rebuttals in Fed. R. Civ. P. 26(a)(2)(D)(ii). Candidly, this is the sort of gamesmanship that should be disallowed, but, alternatively, if it is allowed at all, then the opinions of Dr. Shabo should be strictly limited to rebuttal opinions.

**C.     Argument.**

Clearly, the Shabo report was two weeks late, and it should be stricken for that reason alone. Alternatively, if the report and Dr. Shabo are to be allowed at all, any testimony should be limited to rebutting Dr. Rauchman.

A comprehensive and balanced review of the standard for rebuttal is contained in *United States v. Celgene Corp.,* 2016 WL 6542730, at *4 (C.D. Cal. 2016). Citing and quoting many other sources that will be omitted here, the ruling in *Celgene* emphasizes that the proper function of rebuttal evidence is to contradict, impeach, or defuse the impact of evidence offered by an adverse party; it is not a means for a party to reemphasize its arguments; and rebuttal

1  experts must restrict their testimony to attacking the theories offered by the

2  adversary's experts.

3      Dr. Shabo should be disallowed as an expert based on the explicit orders in

4  ECF No. 96. Alternatively, if he is allowed at all, he should be strictly limited to

5  rebutting Dr. Rauchman.

6  **VII.  CONCLUSION**

7      Based on the foregoing, Dr. Jung should not be allowed as an expert for

8  lack of a timely report, and the same holds true for Dr. Shabo. As for Dr. Gurule,

9  he never examined Mr. and Mrs. Stein and he too should be rejected as an expert

10  witness in this matter.

11

12  Dated: June 11, 2021.               POLI, MOON & ZANE, PLLC

13                                              -and-

14                                  DICKS & COGLIANESE, LLP

15

16                              By  /s/ Michael N. Poli

17                                  Michael N. Poli
                                    Michael D. Dicks
18                                  Attorneys for Plaintiffs

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on June 11, 2021, the foregoing document was served

3   via the method indicated below, on the below listed recipients:

4      ■   [VIA CM/ECF ELECTRONIC TRANSMISSON] by electronically filing
          the foregoing document with the Clerk of the Court using the CM/ECF
5         system, which will send notification of such filing to the following
          CM/ECF registrants:

6

7                         Andrew S. Hollins, Esq.
                          Lynn A. Chang, Esq.
                          Messner Reeves LLP
8              610 Newport Center Drive, Suite 420
                       Newport Beach, CA 92660
9                        ahollins@messner.com
                          lchang@messner.com
10                     *Attorneys for Defendants*

11

12      I declare under penalty of perjury under the laws of the State of Arizona

13   that the above is true and correct.

14      Executed:  June 11, 2021, at Phoenix, Arizona.

15

16                              /s/ *Michael N. Poli*
                              Michael N. Poli

17

18

19

20

21

22

23

24

25

26

27

28