Michael N. Poli, *Admitted Pro Hac Vice*
POLI, MOON & ZANE, PLLC
2999 North 44th Street, Suite 325
Phoenix, Arizona 85018
Telephone: (602) 857-8180
Facsimile: (602) 857-7333
Email: mpoli@pmzlaw.com

Michael D. Dicks, SBN 141914
DICKS & COGLIANESE, LLP
28 North Center Street
Mesa, Arizona 85201
Telephone: (602) 254-4222
Facsimile: (602) 254-0222
Email: mdicks@hoadefectlawyers.com

Attorneys for Plaintiff BARBARA STEIN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BARBARA STEIN, an individual; and STUART STEIN, an individual,

Plaintiffs,

v.

FARMERS INSURANCE COMPANY OF ARIZONA, a corporation; and FARMERS GROUP, INC., a corporation,

Defendants.

Case No. 19-cv-0410-DMS (AHG)

**PLAINTIFF'S MOTION FOR POST-JUDGMENT INTEREST**

Courtroom: 13A
Judge: Hon. Dana M. Sabraw
Magistrate: Hon. Allison H. Goddard

## INTRODUCTION

In the "controlling concurrence" of Justice Stevens in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010),[1] he wrote:

> When a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted ***to avoid that impermissible result***.

*Id.* at 423 (Stevens, J., concurring) (emphasis added). This case is controlled by the law of New Mexico, and New Mexico is unique among the states in that post-judgment interest is a ***substantive component of an injured party's remedy***. New Mexico's post-judgment interest statute, N.M.S.A. § 56-8-4, expressly provides a separate and higher interest rate for judgments that are based on "tortious conduct, bad faith or intentional or willful acts":

> [If] the judgment is based on tortious conduct, bad faith or intentional or willful acts, [the] interest shall be computed at the rate of fifteen percent.

**N.M.S.A. § 56-8-4(A)(2)**. Thus, New Mexico, as a matter of substantive law, believes that if a person is the victim of egregious conduct, and they must expend their fiscal and emotional resources to go all the way through a lawsuit to judgment to recover, that victim is then entitled to a higher interest rate; in other words, the higher interest rate is part of the compensation to such a victim.

Therefore, rotely applying the federal post-judgment interest rate statute, 28 U.S.C. § 1961, would run afoul of Article III of the United States Constitution, *Erie v. Tompkins,* 304 U.S. 64 (1938), and *Shady Grove*. New Mexico is unique among the states in directing that post-judgment interest should be an actual component of a tort victim's remedy. As such, for purposes of New Mexico law ***only***, section 1961 must give way to New Mexico substantive law, and New

---

[1] *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017) ("Justice Stevens, in his controlling concurrence in *Shady Grove*….").

Mexico's post-judgment interest statute should apply here based on the jury's findings of bad faith and intentional and willful misconduct.

## DISCUSSION

### 1. New Mexico and Federal Law re Post-Judgment Interest.

This is a diversity matter arising under this Court's jurisdiction pursuant to Article III, section 2, clause 1 of the United States Constitution, a case "between Citizens of different States." The substantive law at issue in this matter is that of New Mexico, and a federal court sitting in diversity should apply the substantive law of the relevant state. *In re County of Orange*, 784 F.3d 520, 523 (9th Cir. 2015).

This motion addresses the proper interest rate for post-judgment interest on the judgment to be entered in favor of Plaintiff and against Defendant Farmers Insurance Company of Arizona ("FICA"). In that regard, there are facially contradictory directives between the law of New Mexico and that of the United States. New Mexico has a two-tiered system for post-judgment interest, ***turning on the nature of the wrong perpetrated against the victim***:

> Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless: . . .
>
> (2) the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

**N.M.S.A. § 56-8-4(A)(2)**. In contrast, the federal system has a "one-size-fits-all" provision for calculating post-judgment interest:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court…. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

> System, for the calendar week preceding the date of the judgment….

28 U.S.C. § 1961(a).

This provision of section 1961 was adopted in 1982. The Eighth Circuit was the first to consider whether the new statute applied to diversity actions, resulting in a split decision in *Weitz Co. v. Mo-Kan Carpet, Inc.*, 723 F.2d 1382 (8th Cir. 1983). The majority held that section 1961 applied to all cases in federal court (on a "one-size-fits-all" basis), explaining in part:

> The *Erie* doctrine does not require a different result. Even if the rate of interest that a judgment will bear is in some sense "substantive," in that it is a part of the damages recovered by the winning side, it is also easily susceptible of characterization as "procedural," since it has to do exclusively with events that occur after a dispute gets to court.

*Id*. at 1386. Further,

> The same result follows if the *Erie* question is analyzed under the "primary private activity"…. On this view, in diversity cases state law will govern those issues that relate to the parties' primary out-of-court conduct. The theory is that people plan their business conduct, in most instances, against a background of substantive rules of law created by state statutes or court decisions. A rule specifying the rate of interest that a judgment will bear is clearly outside this category. We doubt that anyone plans business conduct on the expectation that if a controversy erupts suit will be filed in federal court, rather than a state court, for the purpose of obtaining the benefit of a federal statute on post-judgment interest.

*Id*. Judge Swygert dissented. He explained that Congress did not have the authority to change the interest rate on judgments that are based solely on state law:

> Congress has only limited authority to dictate the law that applies in a federal court sitting in a diversity action. Judgment interest is an item of substantive damages. See generally Restatement (Second) of Conflict of Laws § 171 comment C (1971). It is not clear whether the Constitution grants Congress the "power to declare" the rate of interest due on judgments in diversity cases in which the claims are

> based entirely upon state law. In any event, if Congress intended to override the authority of the states on this point, it would have done so in more explicit terms than are contained in the new judgment interest statute.

*Id*. at 1387-88 (Swygert, J., dissenting).[2]

Since *Weitz*, most federal courts have adopted the *Weitz* majority's reasoning in making blanket rules regarding post-judgment interest. *See, e.g., Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 114 (2d Cir. 2013). This includes the Ninth Circuit. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998) ("As a ***general rule***, in diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law") (quotation omitted)(emphasis added).

Courts that have applied section 1961 in diversity cases have generally adopted the *Weitz* view that post-judgment interest is primarily a procedural matter, in that it does not "relate to the parties' primary out-of-court conduct." *Weitz*, 723 F.2d at 1386. These courts have accepted the ***general*** proposition that the purpose "of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990). For example, in *Cappiello*, the Second Circuit recognized that Congress "had no power to declare substantive rules of common law applicable in a state," but

[2] Plaintiff would encourage this Court to adopt the reasoning of Judge Swygert's dissent. However, recognizing that the Ninth Circuit has adopted the *Weitz* majority as a general rule for diversity matters, *see Northrop Corp. v. Triad Int'l Mktg.*, S.A., 842 F.2d 1154, 1155–56 (9th Cir. 1988), Plaintiff raises this issue to preserve it for further appeal. However, as set forth below, there is no precedent precluding this Court's recognition that New Mexico is different from other states in its treatment of post-judgment interest as a substantive component of the remedy granted to tort victims in New Mexico.

nonetheless found that, as a general rule, section 1961 did not run afoul of this lack of power. *Cappiello*, 720 F.3d at 114:

> Thus, while "Congress has no power to declare substantive rules of common law applicable in a state," *Erie*, 304 U.S. at 78, "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules," *Hanna* [*v. Plumer*], 380 U.S. [460,] 473 [(1965)]. A statute such as § 1961 that purports to "prescribe rules for the courts [Congress] has created" falls within Congress's Article I power so long as it "regulate[s] matters ***rationally capable of classification as procedure***," *Shady Grove*, 559 U.S. at 406 (internal quotation marks omitted).

*Id*. (emphasis added).

However, as discussed below, New Mexico is different because it treats a higher post-judgment interest rate as part of the substantive remedy granted to a victim of tortious or egregious misconduct. Thus, to use the language of *Cappiello*, the New Mexico post-judgment interest rule for tort victims is not "rationally capable of classification as procedure." Therefore, a blanket application of section 1961 to New Mexico law would do exactly what Congress has "no power" to do, *i.e.,* override New Mexico's clear substantive law.

**2. New Mexico is different from other states in its treatment of post-judgment interest.**

**a. New Mexico's substantive law.**

Virtually every state follows the same model as the federal statute, a single rate of post-judgment interest that applies to all judgments entered in the state. New Mexico, however, does not adhere to the "one-size-fits-all" approach. Rather, the rate of post-judgment interest in New Mexico ***varies depending on the nature of the underlying conduct***. Specifically, the "normal" rate for post-judgment interest is 8.75%, but the rate is 15% if "the judgment is based on tortious conduct, bad faith or intentional or willful acts…." **N.M.S.A. § 56-8-**

4(A). Where a defendant commits such aggravated wrongful conduct, and then compels the victim to go through the entire legal process to the stage of a judgment in order to obtain redress, part of the victim's substantive recovery is the increased post-judgment interest rate.

In New Mexico, "an award of post-judgment interest under Section 56–8–4(A) is mandatory." *Nava v. City of Santa Fe*, 103 P.3d 571, 578, ¶ 22 (N.M. 2004). Thus, under New Mexico substantive law, "'[w]hen a judgment is based on tortious conduct, bad faith, or a finding that the defendant acted intentionally or willfully, a court *must* award interest at the higher rate of [fifteen] percent.'" *Martinez v. Pojoaque Gaming, Inc.*, 264 P.3d 725, 731, ¶ 24 (N.M. App. 2011) (italics in original) (quoting *Pub. Serv. Co. of New Mexico,* discussed below). With respect to this rule, the substantive policy in New Mexico is as follows:

> An award of post-judgment interest serves two purposes. First, post-judgment interest compensates a plaintiff for being deprived of compensation from the time of the judgment until payment of the judgment debt by the defendant. Second, post-judgment interest 'serves a salutary housekeeping purpose… by creating an incentive for unsuccessful defendants to avoid frivolous appeals and by minimizing the necessity for court-supervised execution upon judgments."

*Pub. Serv. Co. of New Mexico v. Diamond D Const. Co.*, 33 P.3d 651, 666, ¶ 51 (N.M. App. 2001) (citations omitted). *Pub. Serv. Co. of New Mexico* also explained the justification for this increased penalty under New Mexico law:

> ***This increased penalty*** [of 15%] is warranted when the facts of a particular case show that the defendant has acted culpably in the past and ***therefore may be in need of additional encouragement to timely pay the judgment debt owed to the plaintiff***.

*Id*. at 667, ¶ 55 (emphasis added).

Moreover, New Mexico's post-judgment interest statute is consistent with that state's overall statutory scheme with respect to the regulation of insurance

companies. For instance, Chapter 39 of the New Mexico Statutes Annotated, entitled "judgments, costs, appeals," Article 2, "attorneys' fees and costs," singles out insurance companies for an award of fees, providing that:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

**N.M.S.A. § 39-2-1**. The New Mexico Supreme Court has explained that section 39-2-1 furthers ***the exact same policy*** as the post-judgment interest statute, namely, to incentivize insurers to perform under their insurance contracts and not force insureds to have to file legal proceedings to get what they are entitled to:

> The purpose of this provision [§ 39-2-1] is to encourage insurers to pay out injury or damage claims promptly without placing on their insureds the unreasonable burden of having to bring a lawsuit to collect what they are entitled to under the policy in order to make themselves whole.

*Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 842, ¶ 27 (N.M. 1995).

Similarly, under the Unfair Insurance Practices Act ("UIPA"), N.M.S.A. § 59A-16-1, *et seq.*, the UIPA authorizes an award of fees to a prevailing plaintiff if "the party [insurer] charged with the violation of that article has willfully engaged in the violation." **N.M.S.A. § 59A-16-30**. As with the post-judgment interest statute, it is "willful" conduct that triggers this penalty. Further, fees under section 59A-16-30 are "in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state…." *Id*.

Therefore, to summarize, the entirety of the New Mexico statutory scheme makes clear that:

- Persons (including, specifically, insurance companies) who engage in "willful" conduct or "bad faith" will be penalized in a manner designed to discourage such conduct; and

- The victims of such willful conduct or bad faith should not have to prosecute a lawsuit to its conclusion in order to recover for such conduct; but if they are forced to do so, they are entitled to the higher rate for post-judgment interest.

This is the substantive law of New Mexico, and the post-judgment interest statute is a critical component of that substantive law.

**b. Under Article III and *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the federal post-judgment interest statute cannot supplant substantive New Mexico law in this diversity matter.**

The starting point for evaluating whether Article III supplants state law in a diversity matter is the seminal federalism case, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "*Erie* involved the constitutional power of federal courts to supplant state law with judge-made rules." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010). The *Erie* Court held:

> There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. ***And no clause in the Constitution purports to confer such a power upon the federal courts.***

*Erie*, 304 U.S. at 78 (emphasis added).

Seven years after *Erie*'s pronouncement, the Supreme Court further explained:

> [*Erie*] expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

More recently, the Court addressed *Erie* in *Shady Grove*, *supra*, again reiterating the importance of ensuring the primacy of state law in diversity matters. In *Shady Grove*, the Court considered whether New York Code of Civil Practice and Rules § 901(b) was "substantive" law that precluded a class action in federal court. Section 901 provided in pertinent part that "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. C.P.L.R. § 901(b). In his concurring opinion—which is now recognized as the decision of the Court, *see, e.g., Phillips v. Philip Morris Companies*., 290 F.R.D. 476, 479–80 (N.D. Ohio 2013) ("In the wake of Shady Grove, a clear majority of courts have applied Stevens's narrower holding as the controlling opinion for use in determining whether a federal rule may displace a conflicting state law") —Justice Stevens asserted that the Rules Enabling Act had to be construed in light of maximizing federalism principles and the right of states to control their own substantive law.

> In our federalist system, Congress has not mandated that federal courts dictate to state legislatures the form that their substantive law must take. ***And were federal courts to ignore those portions of substantive state law that operate as procedural devices, it could in many instances limit the ways that sovereign States may define their rights and remedies. When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice***.

*Id*. at 420 (Stevens, J., concurring) (emphasis added).

> When a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result.

*Id*. at 423.

After *Shady Grove,* the Ninth Circuit has further explained what is considered to be "substantive" for *Erie* purposes:

> In determining whether a state law is substantive or procedural, we ask whether the law is outcome determinative, that is, whether not applying the law would significantly affect the result of the litigation. We have explained that a substantive rule is one that creates rights or obligations while a procedural rule defines a form and mode of enforcing the substantive right or obligation.

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1735 (2021).

Applying these principles here, under any formulation of "substantive," New Mexico's post-judgment interest statute for tort victims falls within the definition of "substantive." The rate of interest that a successful tort victim receives is governed directly by the nature of the defendant's conduct. The more culpable the tortfeasor, the greater the post-judgment interest rate. This is part of the successful tort victim's remedy in New Mexico. As noted above, the higher interest rate helps ensure that if a person injured by particularly culpable conduct is forced to go through the additional trauma of a trial to judgment, then the culpable tortfeasor has an incentive to promptly pay the victim.[3]

The *Public Service Co. of New Mexico* Court expressly referred to the higher rate as a "penalty." 33 P.3d 651, 666-67, ¶¶ 51, 55. In this regard, courts have routinely characterized "penalties" as substantive state law. For example in *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781 (N.D. Cal. 2015), the Court stated:

> A number of other federal courts have held that PAGA's [California's Private Attorney General Act] provisions creating

[3] This concern is particularly noteworthy here. At the much lower federal post-judgment interest rate, Defendant FICA may well conclude that regardless of the merits of any appeal (or the lack thereof), it is in its business interest to appeal and invest the funds at a greater rate than to simply pay Mrs. Stein.

> representative claims for civil penalties are substantive under *Erie* and therefore must be applied in federal court, unlike mere procedural state rules

*Id.* at 809. "[A] bad faith penalty provision that imposes attorney's fees, is substantive for purposes of *Erie*…." *Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am.*, 227 F. Supp. 2d 1348, 1357 (N.D. Ga. 2002); *cf. McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) ("statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes").

In the federal system as well as well as most states, post-judgment interest follows a "one-size-fits-all" model, regardless of the underlying conduct. New Mexico, in contrast, has made an award of post-judgment interest part of its substantive law. Recognizing this fact does not require the wholesale rejection of 28 U.S.C. § 1961 in diversity matters; rather, the narrow ruling sought here is that where a state has chosen to make post-judgment interest substantive for tort victims (as in New Mexico), the constitutional requirements outlined in *Erie* compel the application of that substantive state law. *Cf. United States v. Stevens*, 559 U.S. 460, 484 (2010) ("The 'strong medicine' of overbreadth invalidation need not and generally should not be administered when the statute under attack is unconstitutional as applied to the challenger before the court").

New Mexico is different from other states in its treatment of post-judgment interest. And Article III of the United States Constitution and *Erie* require this Court to respect New Mexico's substantive approach to post-judgment interest.

**3. Regardless of whether the New Mexico substantive statute or federal law controls the interest rate, the principal amount includes all amounts in the judgment, including prejudgment interest and attorney's fees.**

"Post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest." *Lagstein v. Certain*

*Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013). Likewise, all attorney's fees awarded are also subject to post-judgment interest. *Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir. 1973).

**CONCLUSION**

New Mexico's substantive law regarding post-judgment interest controls in this matter. Accordingly, Plaintiff respectfully requests that this Court utilize the post-judgment interest rate set forth in New Mexico Statutes Annotated section 56-8-4(A)(2).

Dated: August 18, 2021.

POLI, MOON & ZANE, PLLC

-and-

DICKS & COGLIANESE, LLP

By *\/s/ Michael N. Poli*
Michael N. Poli
Michael D. Dicks
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2021, the foregoing document was served via the method indicated below, on the below listed recipients:

■ [VIA CM/ECF ELECTRONIC TRANSMISSION] by electronically filing the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF registrants:

Andrew S. Hollins, Esq.
Lynn A. Chang, Esq.
John V. Bell, Esq.
Messner Reeves LLP
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626
ahollins@messner.com
lchang@messner.com
jbell@messner.com
*Attorneys for Defendant Farmers Insurance Company of Arizona*

I declare under penalty of perjury under the laws of the State of Arizona that the above is true and correct.

Executed: August 18, 2021, at Phoenix, Arizona.

*/s/ Michael N. Poli*
Michael N. Poli