1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BARBARA STEIN, an individual,

Plaintiff,

v.

FARMERS INSURANCE COMPANY
OF ARIZONA, a corporation,

Defendant.

Case No.:  19-cv-00410-DMS-AHG

**ORDER DETERMINING THE
AMOUNT OF ATTORNEYS' FEES
PLAINTIFF OWES FORMER
COUNSEL**

Pending before the Court is Plaintiff Barbara Stein's ("Plaintiff") motion for determination of attorneys' fees.  (Plaintiff's Mot. for Determination of Attorneys' Fees, ("Pl.'s Mot."), ECF No. 333.)  Plaintiff's Former Counsel, Michael Poli and Michael Dicks ("Former Counsel") filed a response in opposition to the motion, (Former Counsel's Response in Opposition to Plaintiff's Motion, ("Former Counsel's Opp'n"), ECF No. 337), and Plaintiff filed a reply.  (ECF No. 339.)

## I. BACKGROUND

This matter involves a dispute as to the amount of attorneys' fees owed to Plaintiff's Former Counsel in their representation of her insurance bad faith case against Defendant Farmers Insurance Company of Arizona ("Defendant" or "FICA").  Plaintiff Barbara Stein and her husband, former plaintiff Stuart Stein, are residents of New Mexico.  On September

1

9, 2018, Plaintiff and her husband were involved in an automobile accident in Colorado in which an uninsured driver rear-ended the Steins' vehicle at a speed of nearly 70 miles per hour.  The Steins sustained injuries from this collision.  The Steins were insured by FICA, an Arizona insurer with its principal office in California.  Plaintiffs initially hired Joseph Dicks from Dicks & Workman (D&W), a California based law firm, to represent them in their insurance bad faith claim against FICA under New Mexico's Unfair Claims Practices Act.  The Steins incurred approximately $327,560 in hourly fees to D&W.  When it became clear the case was going to trial in San Diego, California, the Steins hired Michael Poli of Poli, Moon, & Zane PLLC ("PMZ LLC") and Michael Dicks of Dicks & Coglianese ("D&C") (together "Former Counsel") to represent them in their claims against FICA.  On May 27, 2021, two months before trial, the Steins entered into a retainer agreement with Mr. Poli, the only attorney signatory on the retainer agreement.  The retainer agreement stated that Former Counsel would accept all risks in the case in exchange for 40% of the gross amount recovered.  The agreement further provided that Former Counsel would split the fees recovered with PMZ LLC taking 60% and D&C taking 40% of the fees recovered.

Former Counsel successfully represented Plaintiff in an eight-day jury trial in this Court that concluded on August 5, 2021.  The jury returned a favorable verdict for Plaintiff and awarded her $2,500,000 in compensatory damages, $500,000 in contractual damages, and $3,000,000 in punitive damages.  The parties filed multiple post-trial motions and objections.  The Court issued an Order on January 24, 2022, in which the Court, in relevant part: denied FICA's post-trial motions; remitted punitive damages to $500,000; awarded $776,222.37 in pre-judgment interest; and awarded Plaintiff attorneys' fees from FICA in the amount of $1,322,779.21, or 40% of the adjusted jury verdict.[1]  (ECF No. 302.) Subsequently, FICA appealed the jury's verdict to the Ninth Circuit.  Former Counsel

---

[1] The Court calculated an attorneys' fees award of $1,322,779.21, or 40% of $3,306,948.02, which is the total remitted damages award minus: (1) $175,000 advance payment by FICA to Plaintiff, (2) $9,869.98 reimbursement to Medicare, and (3) $8,182.00 for payments by FICA under the medical payments coverage of the insurance policy.  (ECF No. 289 at 14.)

successfully represented Plaintiff through the appeal and the Ninth Circuit affirmed the jury's verdict and judgment.

On November 2, 2023, FICA's appellate attorney informed Former Counsel that FICA was ready to pay the judgment. The next morning, Mr. Stein emailed Former Counsel attempting to void the retainer agreement under California Business and Professions Code Section 6147 because the agreement did not include a "statement that the fee is not set by law but is negotiable between attorney and client" as required by California law. Cal. Bus. & Prof. Code § 6147(a). Notably, the retainer agreement did not include a choice-of-law provision. Thus, the heart of the instant motion is whether California or New Mexico law applies to the retainer agreement which was signed by Mr. Poli, a licensed attorney in Arizona, and the Steins, New Mexico residents, in relation to Former Counsel's representation of the Steins in their claims against FICA, an Arizona insurer.

Plaintiff argues the Court must apply California law and void the retainer agreement under Section 6147. Additionally, Plaintiff argues that if the Court voids the retainer agreement under California law, the Court should limit Former Counsel's recovery to $1,322,779.21, or 40% of the total damages recovered, the amount the Court ordered FICA to pay in attorneys' fees. (ECF No. 302.) Former Counsel argues the Court must apply New Mexico law and enforce the contract as written thereby awarding Former Counsel 40% of the gross amount recovered. In the alternative, Former Counsel contends that even if the Court were to void the retainer agreement under California or New Mexico law, the Court should award Former Counsel 40% of the gross amount recovered as reasonable compensation for their services.

Ultimately, to render a binding judgment in this matter, the Court must determine: (1) whether the Court has subject matter jurisdiction over the instant motion; (2) which state's law applies to the retainer agreement; and (3) whether the retainer agreement is enforceable under the applicable state's law.

//

//

## II. DISCUSSION

### A. Ancillary Jurisdiction

Federal courts are courts of limited jurisdiction. *See, e.g., Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). The party bringing the motion has the burden of proving the court has jurisdiction over the instant matter. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994). If there is no diversity, federal question, or other independent basis for jurisdiction, a party may ask a federal court to invoke the doctrine of ancillary jurisdiction. "The doctrine of ancillary jurisdiction . . . 'recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 378).

The Court does not have original jurisdiction over the instant motion. Thus, Plaintiff asks the Court to exercise ancillary jurisdiction over the instant motion and resolve the dispute for attorneys' fees between Plaintiff and her Former Counsel. Defendants do not dispute the Court's authority to exercise such jurisdiction. Because "[t]here is no debate that a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation,'" the Court exercises ancillary jurisdiction over the instant motion. *K.C. ex rel. Erica C.*, 762 F.3d at 968 (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)); *see Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991) ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.") (quoting *Jenkins v. Weinshienk*, 670 F.2d 918 (10th Cir. 1982)). The Court now addresses the merits of the instant motion.

### B. Choice of Law

"A federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits." *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016). A federal court exercising ancillary jurisdiction, must "apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Paulsen v. CNF, Inc.*, 559 F.3d 1061,

1080 (9th Cir. 2009) (citing *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)).  Because this Court sits in California, the Court must apply California's choice-of-law rules to determine which state law governs the retainer agreement.  The Ninth Circuit acknowledges that there appears to be a dispute among California courts as to whether California's choice of law rule for contracts is the common law governmental interest test or the statutory test under Cal. Civ. Code Section 1646.  *Arno v. Club Med Inc.*, 22 F.3d 1464, at 1468 n.6 (9th Cir. 1994).  The common law governmental interest test is a three-part test that requires the Court to consider whether the two states' laws differ and if so, examine each state's interest in applying its law to the case at hand.  *Id.* at 1467.  The statutory analysis test under Cal. Civ. Code Section 1646 states that "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  *Id.* (quoting Cal. Civ. Code § 1646).

In analyzing questions of state law, federal courts are bound by the decisions of the state's highest court.  *U. Broth. of Carpenters & Joiners of Am. Loc. 586 v. N.L.R.*, 540 F.3d 957, 963 (9th Cir. 2008).  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986).  "If there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it."  *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (emphasis omitted).

In *Chen v. L.A. Truck Centers., LLC*, the California Supreme Court held that "In California, 'general choice-of-law rules have been formulated by courts through judicial decisions rendered under the common law, rather than by legislature through statutory enactments.'"  7 Cal.5th 862, 867 (2019) (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 83 (2010)).  Although the California Supreme Court has not explicitly held that the governmental interest test supplants the statutory analysis, the California Supreme

19-cv-00410-DMS-AHG

Court has not cited the statutory analysis since it adopted the governmental interest approach outlined in *Reich v. Purcell*, 67 Cal. 2d 551 (1967), and summarized in *Chen*. *See Pep Boys Manny Moe & Jack of Cal. v. Old Rep. Ins. Co.*, 98 Cal. App. 5th 329, 347 (2023) (citing *Reich*, 67 Cal.2d at 551 [adopting governmental interest approach in tort case]; *Bernkrant v. Fowler*, 55 Cal.2d 588, 594-96, (1961) [examining governmental interests in a contract case]; *Beneficial Fire & Casualty Ins. Co. v. Kurt Hitke & Co*., 46 Cal.2d 517, 526 (1956) [last California Supreme Court case to cite § 1646].)

In the absence of an explicit ruling from the California Supreme Court that the governmental interest test supplants the statutory analysis, intermediate appellate courts have attempted to clarify if and when each test applies. In *Frontier Oil Corp v. RLI Ins. Co.*, a California appellate court held that the statutory analysis test applies when a court seeks to *interpret* a contract and the governmental interest analysis applies to all other choice of law issues. 153 Cal. App.4th 1436, 1459 (2007). *Frontier Oil*'s clarification has yet to be confirmed or challenged by the California Supreme Court, however, it has been adopted by lower courts in California and district courts in the Ninth Circuit. *See, e.g., Kelly v. Teeters*, 2014 WL 6698787 at *8 (Cal. App. Nov. 26, 2014); *Farmers Ins. Exch. v. Veveriros*, 2011 WL 1535404 at *5 n.1 (Cal. App. April 25, 2011); *Schoelle Corp. v. Ag. Ins. Co.*, 2012 WL 4244157 at *6 (Cal. App. Sept. 21, 2012); *James River Ins. Co. v. Medolac Lab.*, 290 F. Supp.3d 956, 964 (C.D. Cal. 2018); *CSNK Working Cap. Fin. Corp. v. Next Creation Holdings*, No. 17-cv-00305-HRL, 2018 WL 276815 at *4 n.3 (N.D. Cal. Jan. 3, 2018); *Human Res. Adv., LLC. v. Hanover Ins. Co.*, No. 1:21-cv-01610-JLT-BAM, 2022 WL 1214899 at *6 (E.D. Cal. Apr. 25, 2022).

In *Pep Boys*, a California appellate court hinted that *Frontier Oil*'s clarification might be dicta, however, the court ultimately applied *Frontier Oil*'s analysis and declined to make a definitive ruling regarding which choice of law analysis applies to contract disputes. 98 Cal. App.5th 329 at 347 ("we need not wade into those deep waters and determine which choice of law analysis governs"). Until the California Supreme Court or another California appellate court provides clear guidance regarding which choice of law

test to apply to contract disputes, the Court will follow the leading state intermediate appellate court decision.  Thus, the Court adopts *Frontier Oil*'s determination that the statutory analysis test applies to questions of contract interpretation and the governmental interest test applies to all other choice of law issues.

Applying *Frontier Oil*'s clarification, Former Counsel contends the Court need not apply the statutory analysis under California Civil Code Section 1646 because Plaintiff "does not seek to *interpret* the Fee Agreement but to void it." (Former Counsel's Response at 13) (emphasis added).  "California courts apply the choice-of-law rules found in California Civil Code § 1646 to questions of contract interpretation, and the governmental interest test to questions other than interpretation, such as acceptance, rejection, and revocation." *CSNK Working Cap. Fin. Corp.*, 2018 WL 276815 at *4 n.3.  Plaintiff seeks to void the contract under California Business and Professions Code Section 6147; thus, the Court finds that Cal. Civ. Code Section 1646 does not apply to the instant motion.  The Court will analyze the facts under the governmental interest test to determine if California or New Mexico law governs the retainer agreement.[2]

*i. Governmental Interest Test*

California's common law "governmental interest analysis" requires the Court to consider which state has the greatest interest in governing the contract absent a choice-of-law provision.  *Reich*, 67 Cal.2d at 511.  The governmental interest analysis test is comprised of three steps:

> First, the court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it.  Second, if the laws do differ, then the court must determine what interest, if any, the competing jurisdictions have in the application of their respective laws.  If only one jurisdiction has a legitimate

---

[2] The parties do not contend that Arizona law applies to the retainer agreement, thus, the Court only addresses the parties' arguments regarding the application of California or New Mexico law.  It is worth noting that the retainer agreement is enforceable under both Arizona and New Mexico law as neither Arizona nor New Mexico requires a retainer agreement to include the specific contractual language stated in California's Business and Professions Code Section 6147.

interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied.  But if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions.

*Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 559 (9th Cir. 2020).

### A. First Step: Material Difference

The Court must first determine if New Mexico's law on retainer agreements materially differs from California's law.  A material difference of law exists if application of the states' laws would lead to different results.  *McCann*, 48 Cal.4th 68, 88-90 (2019).  Plaintiff asks the Court to apply California's Business and Professions Code Section 6147 which sets multiple requirements for retainer agreements, including the requirement that such agreements contain a statement "that the fee is not set by law but is negotiable between attorney and client."  Cal. Bus. & Prof. Code § 6147.  Under New Mexico law, by contrast, the retainer agreement need not include this specific contractual language to be enforceable.  Because the retainer agreement failed to include the specific contractual language required under California law, the contract is void under California law but enforceable under New Mexico law.  Thus, a true conflict exists, and the Court must determine whether each state has an interest in the outcome of this motion.

### B. Second Step: Each State's Interest in Having its Law Applied

Under the second step of the governmental interest analysis, the Court must determine "what interest, if any, each state has in having its own law applied to the case."  *WA Mutual Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 910 (2001).  "In assessing each state's interest in having its law applied, this Court must examine the policies underlying each state's rule of law."  *Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp.2d 909, 916 (N.D. Cal. Dec. 13, 2010) (citing *Offshore Rental Co., Inc. v. Continental Oil Co.*, 583 P.2d 721, 724-25 (1978)).  If the Court finds that only one state has an interest in having its own law applied, the Court need not proceed to step three and determine "whose interest would be 'more impaired' if its laws were not applied."  *WA Mut. Bank*, 24 Cal. 4th at 910 (citations omitted).

The Court finds that New Mexico has an interest in applying its law to the retainer agreement.  The retainer agreement was negotiated and accepted in New Mexico between New Mexico residents and their Arizona attorneys regarding representation of the Steins in their claims against an Arizona insurer under New Mexico's bad faith insurance statutes. Certainly, New Mexico has an interest in protecting its residents when they contract with out of state attorneys.  *See Jacobs v. Taylor*, Civ. No. 22-135 SCY/LF, 2022 WL 14008463 (D. N. M. Oct. 24, 2022) ("New Mexico [] has a strong public policy interest in regulating the attorneys that practice in New Mexico, represent New Mexico clients, and conduct New Mexico UCC filings.")

By contrast, the only connection California has to the parties and underlying facts is the fact that the trial was held in federal court in San Diego, California.  California's law seeks to "benefit and protect clients by informing them at the outset of the representation in a signed writing, inter alia, of the amount of attorney fees they will incur under fee for service and contingency fee agreements." *Missakian v. Amusement Indus., Inc.*, 69 Cal. App. 5th 630, 644 (Cal. App. 2021).  However, the Court finds that the California legislature did not intend this statute to apply to contracts between New Mexico residents and Arizona attorneys.  *See Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp.2d 909, 916 (finding that California has no interest in applying its law to an insurance contract between an Illinois corporation doing business with a Washington Corporation).  While it is true that generally, "as the forum state, California has an interest in applying its law to this case," the Court finds California does not have an interest in governing the contract in dispute because the parties do not have any connection to California.  *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F. Supp.2d 1183, 1201 (S.D. Cal. 2007) ("Generally, parties seeking to invoke California law have genuine connections to the state.") (citing *Rosenthal v. Fonda,* 862 F.2d 1398, 1402 (9th Cir. 1988)); *Columbia Cas. Co.*, 758 F. Supp.2d at 916 (citations omitted).

Plaintiff argues that California has an interest in applying its law to the retainer agreement because Mr. Poli, a licensed Arizona attorney, appeared pro-hac vice in this

Court, and therefore, "has subjected himself to California's professional standards and sanctions including those related to the validity of the retainer agreements" pursuant to Local Rule 83.3. (Pl.'s Mot. at 17.)  However, Plaintiff does not cite any authority and the Court is not aware of any authority supporting this proposition.[3]  Local Rule 83.3(4) discusses requirements and procedures for out of state attorneys wishing to appear *pro hac vice* in the Southern District of California.  The rule states that attorneys *seeking pro hac vice* admission must "adhere to this court's rules, including without limitation, the Court's Code of Conduct under Civ. L.R. 2.1 and Crim L.R. 2.1 . . . ." Civ. L. R. 83.3(4).  Contrary to Plaintiff's assertion, the local rules do not state that attorneys appearing *pro hac vice* are subject to California's state law requirements on retainer agreements, including Section 6147.  *See Grant & Eisenhofer*, No. CV 17-5968 PSG (PJWx), 2018 WL 3817859 at *3 (C.D. Cal. Mar. 27, 2018) (finding that "§ 6147 is not properly applicable through the Local Rules").  Plaintiff fails to cite any federal rule, circuit rule, or local rule that subjects Mr. Poli to Section 6147.  Thus, the Court finds Mr. Poli was not subject to Section 6147 by appearing *pro hac vice* in the underlying matter.

Ultimately, Plaintiff's argument that California has any interest in governing this retainer agreement is tenuous at best and calculated at worst.  Although the trial was held in California, it is worth noting that it was held in federal court applying New Mexico substantive law.  Because California has no interest in the parties or subject matter as they relate to the facts of this case, the Court declines to apply California law for the first time in this matter to a post-judgment motion for determination of attorneys' fees between New Mexico residents and Arizona attorneys.  *See Hurtado v. Sup. Ct.*, 11 Cal.3d 574, 670 (1974) ("When one of two states related to a case has a legitimate interest in the application

---

[3] Plaintiff cites California Rules of Court, Rule 9.40(f), to support her argument that an out of state attorney admitted to appear *pro hac vice* in a California court is subject to California's Business and Professions Code.  However, the Court need not address this argument because the "California rules of court apply only in state court, not federal court."  *Inland Concrete Enterprises, Inc. v. Kraft*, 318 F.R.D. 383, 406 (C.D. Cal. Aug. 24, 2016).  Thus, the Court finds Mr. Poli was not subject to the California Rules of Court when he was admitted to appear *pro hac vice* in the Southern District of California.

of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.") (citations omitted).  Because the Court finds that only New Mexico has a legitimate interest in governing the retainer agreement, the Court need not proceed to step three in the governmental interest analysis.  *See WA Mut. Bank*, 24 Cal.4th at 909 ("Only if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied.")

### C. Application of New Mexico Law to the Retainer Agreement

Under New Mexico law, "[w]here one employs an attorney and makes an express valid contract, stipulating for the compensation which the attorney is to receive for his services, such contract is generally speaking, conclusive as to an amount of such compensation[,]" and, "[i]t is the function of the court to enforce the contract as made." *Murphy v. Eagle's Nest Condominiums Ass'n*, 2018 WL 22144612 at *2 (N.M. App. 2018) (quoting *Citizens Bank v. C & H Constr. & Paving Co.*, 93 N.M. 422, 427 (N.M. App. 1979)) (internal quotation marks and citation omitted).  "It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and not create a new agreement for the parties." *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129 (N.M. App. 1990).  However, to be enforced as written, "the agreement must be reasonable and it must have 'been fairly and freely made with full knowledge by the client of its effect and all of the material circumstances relating to the reasonableness of the fee.'" *Castillo v. Arrieta*, 368 P.3d 1249, 1255 (N.M. App. 2016) (quoting *Citizens Bank*, 93 N.M. at 428).

Both parties agree that the retainer agreement clearly states Former Counsel is entitled to 40% of the gross amount recovered.  Plaintiff does not contend that the contract was entered into against her will or a result of Former Counsel's misconduct.  *See Walters v. Hastings*, 84 N.M. 101, 108 (N.M. 1972) ("where, as here, the contract of retainer fixes the amount of the attorney's compensation, and the attorney has not offended, either

through misconduct or neglect, the court has not the power . . . to reduce the amount fixed by the contract") (citations omitted).  Thus, the Court does not find the facts of this case warrant an exception to New Mexico's general policy requiring courts to enforce retainer agreements as written.  *Lozano v. GTE Lenkurt, Inc.*, 122 N.M. 103, 109 (N.M. 1996) ("Generally, courts should enforce contingency fee contracts as made) (upholding a retainer agreement as written absent a finding of attorney misconduct).

Plaintiff contends the term "gross amount" is ambiguous because the retainer agreement does not define gross amount.  Under New Mexico law, "an ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."  *Mark V., Inc. v. Mellekas*, 114 N.M. 778, 845 (1993).  A contract is ambiguous "if different sections conflict or if the language is capable of more than one meaning."  *Thompson v. Potter*, 268 P.3d 57, 62 (N.M. App. 2011).  Here, the Steins do not provide an alternative definition of gross amount nor do they contend they understood gross amount to refer to anything but the total amount of recovery.  In fact, Former Counsel contends "Before signing, Mr. Stein explicitly admitted that he and his wife understood the contingency fee was on all gross amounts recovered."  (Former Counsel's Opp'n at 5); *see id.* at Exhibit 5 (Email from Mr. Stein stating, "Now that you have reminded us, we do remember you saying that your fees are on the gross amount that you recover.")  Thus, the Court finds the term is not ambiguous for the parties understood "gross amount" to refer to the total amount of recovery.

In the alternative, Plaintiff contends that an award of attorneys' fees in the amount of 40% of the gross amount recovered is unreasonable under New Mexico law and the Court should award Former Counsel $1.3 million, or 40% of the total damages recovered, the amount the Court ordered FICA to pay Plaintiff in attorneys' fees.  Plaintiff contends the Court awarded this amount after considering the reasonableness factors under Rule 16-105(A) of New Mexico's Rules of Professional Conduct.  While it is true the Court analyzed the reasonableness factors under Rule 16-105(A) and ordered FICA to pay $1.3 million in attorneys' fees, the Court analyzed these factors within the context of the amount

FICA, the losing party, should pay Plaintiff in attorneys' fees *not* what constitutes a reasonable fee distribution between Plaintiff and her Former Counsel. Additionally, the Court analyzed these factors before Former Counsel represented Plaintiff in multiple post-trial motions and the appeal. Thus, the Court's prior decision ordering FICA to pay $1.3 million in attorneys' fees does not void the retainer agreement nor limit Former Counsel's recovery to $1.3 million.

Plaintiff further argues in a footnote that the Court's prior order dated January 24, 2022, ordering FICA to pay $1.3 million in attorneys' fees is a final judgment and Former Counsel "should be estopped from furthering argument that they are entitled to attorneys' fees beyond those ordered by the Court" under the doctrine of *res judicata*. (Pl. Mot. at 12 n.4.) "The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action," and "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." *In re Schimmels,* 127 F.3d 875, 881 (9th Cir.1997) (internal quotation marks omitted). The elements necessary to establish *res judicata* are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,* 322 F.3d 1064, 1077 (9th Cir. 2003). The Court addresses each element in turn.

First, the instant motion does not present the same claims as the prior motion for the Court was not asked to determine if the retainer agreement between Plaintiff and Former Counsel is enforceable under New Mexico or California law. Instead, the Court was asked to determine the amount of money, FICA, the losing party, should pay Plaintiff in attorneys' fees. It cannot be said the instant motion involves the same claim or even a similar claim as the prior motion. Second, the Court entered a final judgment on the merits against FICA, not Former Counsel. Third, Former Counsel was a not a party to the prior matter nor was Former Counsel in privity with the parties in the prior motion. *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1054 (9th Cir. 2005) ("Privity . . . is a legal conclusion 'designating a person so identified in interest with a party to former litigation

that he represents precisely the same right in respect to the subject matter involved.") (citing *Schimmels*, 127 F.3d at 881) (quotations omitted).  It cannot be said that Plaintiff and Former Counsel's interests align when it comes to enforcing the retainer agreement. Accordingly, the instant motion is not barred by the doctrine of *res judicata*.

The Court finds the retainer agreement to be reasonable, unambiguous, and fair given the circumstances surrounding the case.  This case involved multiple claims, an eight-day trial, complex post-trial motions, and a challenging appeal.  Former Counsel expended a substantial amount of time and money in successfully litigating Plaintiff's claims at both the trial and appellate level totaling "nearly 2,000 hours" and "hundreds of thousands of dollars of costs . . .."  (Former Counsel's Opp'n at 18; Exhibits 19, 20.) Former Counsel accepted representation only two months before trial and "pushed off other work" to fully concentrate on the case at hand.  (*Id.* at 18.)  As a result of Former Counsel's significant efforts, counsel successfully recovered a jury verdict for $3 million in compensatory damages and $3 million in punitive damages.  Although this Court remitted the punitive damages award to $500,000, Former Counsel recovered the following additional sums in post-trial motions: $1,322,779.21 in attorneys' fees; $776,222.37 in pre-judgment interest; and $324,630.22 in costs/litigation expenses.  This along with an award for post-judgment interest resulted in an approximately $6 million judgment that Former Counsel successfully defended on appeal.

It is undisputed that Plaintiff and Former Counsel entered into a retainer agreement whereby Former Counsel was to receive 40% of the gross amount recovered.  Thus, the Court is not persuaded that the retainer agreement permitting Former Counsel to recover 40% of the gross amount recovered is so unreasonable or unconscionable that the Court must void the contract as written.  *See Lozano v. GTE Lenkurt, Inc.*, 122 N.M. 103, 110 (N.M. App. 1996) ("[a]n attorney is entitled to the fee on which he and his client have agreed") (quotations and citations omitted); *In re Carson's Will*, 87 N.M. 43, 44 (N.M. 1974) ("The contract between the parties was a standardized, unambiguous, contingent fee contract.  It is a long-standing rule in New Mexico that the court does not have the authority

to alter or amend a contract; instead—[i]t is the function of the court to interpret and enforce the contract as made by the parties.") (citing *Hopper v. Reynolds*, 81 N.M. 255, 261 (1970)).

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court enforces the retainer agreement as written. Former Counsel will take 40% of the gross amount recovered from FICA under the terms of the contract. Accordingly, Former Counsel is entitled to 40% of the following damages and costs awarded by the jury and/or this Court: compensatory damages; punitive damages; pre-judgment interest; post-judgment interest; costs/litigation expenses; and attorneys' fees.

**IT IS SO ORDERED.**

Dated:  May 17, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court